# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JOYCE NELSON, an individual, | ) |
| | ) |
| Plaintiff, | ) **Case No.:** |
| | ) |
| | ) **COMPLAINT FOR** |
| v. | ) **VIOLATIONS OF THE FAIR** |
| | ) **DEBT COLLECTION** |
| | ) **PRACTICES ACT ("FDCPA")** |
| PORTFOLIO RECOVERY | ) **AND GEORGIA'S FAIR** |
| ASSOCIATES LLC, a Delaware | ) **BUSINESS PRACTICES ACT** |
| Limited Liability Company, | ) **("FBPA")** |
| | ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| | ) |

## COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

COMES NOW Joyce Nelson, Plaintiff, and states the following complaint for violations of the Fair Debt Collection Practices Act against PORTFOLIO RECOVERY ASSOCIATES LLC:

## Introduction

### 1.

Plaintiff Joyce Nelson, through her counsel, brings this action to challenge the acts of Defendant PORTFOLIO RECOVERY ASSOCIATES LLC regarding its attempts to unlawfully, misleadingly, and abusively attempt to collect a debt, as well as the use of unfair and unconscionable

1

means to collect or attempt to collect a debt, and Defendant's engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, and Defendant's conduct caused Plaintiff damages.

2.

While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

3.

Plaintiff believes that any and all violations by Defendant as alleged in this Complaint were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

**Jurisdiction and Venue**

4.

This action arises out of Defendant's illegal and improper efforts to collect a consumer debt, and includes multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA"), Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.* ("FBPA"), and Georgia's Unfair and Deceptive Practices Towards the Elderly Act, O.C.G.A. § 10-1-850 *et seq.* ("UDPTEA"), and Plaintiff's

claims under these statutes are so related that they form the same case or controversy.

5.

Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331 & 1337, as well as 28 U.S.C. § 1367 (Supplemental Jurisdiction).

6.

This Court has personal jurisdiction over the Defendant for the purposes of this action because Defendant regularly transact business in the State of Georgia and the committed acts that form the basis for this suit occurred within the State of Georgia.

7.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant's actions targeted Plaintiff within this District.

**PARTIES**

8.

Plaintiff JOYCE NELSON is a natural person who is a resident of Gwinnett County, Georgia.

9.

PORTFOLIO RECOVERY ASSOCIATES LLC ("PORTFOLIO") is a Limited Liability Company organized under the laws of the State of Delaware and doing business in the State of Georgia, and in particular Fulton County.

10.

PORTFOLIO RECOVERY ASSOCIATES LLC has a registered agent named CORPORATION SERVICE COMPANY located at 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808 and what appears to be a principal place of business at 120 CORPORATE BLVD, NORFOLK, VA 23502.

11.

Despite transacting business within Georgia, and with Georgia residents, on a routine and regular business as part of its debt collection activities, including both entering into settlement agreements and filing lawsuits against consumers within this District and in the State of Georgia, Defendant PORTFOLIO does not appear to have a registered agent within the State of Georgia, hold any assets within the State of Georgia, or have a registered or principal office in the State of Georgia.

12.

Defendant PORTFOLIO RECOVERY ASSOCIATES LLC is in the business of debt collection, as the principal purpose of its business is the collection of debts.

13.

Defendant PORTFOLIO RECOVERY ASSOCIATES LLC can be served through its registered agent, CORPORATION SERVICE COMPANY located at 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808 or by service on an officer or director of the company at its principal place of business located at 120 CORPORATE BLVD, NORFOLK, VA 23502.

**STANDING**

14.

Plaintiff has suffered an injury in fact as a result of Defendant's violations of the FDCPA.

15.

The injury caused by Defendant's FDCPA violations has affected Plaintiff in a personal and individual way.

16.

Specifically, Defendant's violations of the FDCPA have violated Plaintiff's statutory rights.

17.

Defendant's violations of the FDCPA have also caused Plaintiff to be injured in a personal and individual way by causing Plaintiff unnecessary stress and anxiety, and significant emotional distress, that would not have occurred but for Defendant's violations of the FDCPA.

18.

Plaintiff's injury caused by Defendant's violations of the FDCPA are concrete and actually exist.

19.

Defendant's violations of the FDCPA have resulted in an injury-in-fact that is particularized to Plaintiff because the FDCPA creates legal rights for Plaintiff that were invaded by Defendant's violations of the FDCPA.

20.

The FDCPA statutorily creates Plaintiff's right to true and accurate information as well as a private right of action to enforce this statutorily created right to be provided true and accurate information.

21.

The FDCPA statutorily creates Plaintiff's right to be free of harassing, abusive, or oppressive conduct during Defendant's attempt to collect an alleged debt as well as a private right of action to enforce this statutorily created right.

22.

The FDCPA statutorily creates Plaintiff's right to be free from unfair and unconscionable means in the attempt to collect a an alleged debt, as well as a private right of action to enforce this statutorily created right.

23.

Plaintiff's injuries caused by Defendant's violations of the FDCPA are particular and concrete in that they are legally cognizable injuries through the FDCPA, they have invaded Plaintiff's legal rights, and they have resulted in stress and anxiety as well as emotional distress.

**FACTUAL BACKGROUND**

24.

Plaintiff JOYCE NELSON is a person who is protected from the kind of behavior prohibited in 15 U.S.C. §§ 1692d, 1692e, and 1692f.

25.

Plaintiff JOYCE NELSON is an elder person within the meaning of O.C.G.A. 6 10-1-850(2) as she is more than 60 years of age.

26.

WILLIAM NELSON was a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(3), as he was a natural person who Defendant alleged was obligated to pay a consumer debt (the "Alleged Debt").

27.

The William Nelson who resided at Plaintiff's address where Defendant continues to mail its dunning letters was the husband and spouse of Plaintiff JOYCE NELSON.

28.

WILLIAM NELSON is now deceased, and has been so since December of 2010.

29.

Defendants have attempted to collect an Alleged Debt that is a "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5), as the subject of the transactions composing the alleged debt are, according to Defendants' own documentation, for primarily personal, family, or household purposes.

30.

Specifically, the Alleged Debt is one from AARON RENTS, a personal, family, and household furniture rental company that does business within the Atlanta, Georgia metropolitan region.

31.

Defendant used instruments of interstate commerce in order to attempt to collect the alleged debt from Plaintiff, including the use of the United States Mail.

32.

The principal purpose of Defendant's business is the collection of debts, such as the Alleged Debt.

33.

Defendant has engaged, during the course of a number of years, in the attempt to collect the Alleged Debt both through phone calls and through letters sent to the residence of Plaintiff addressed to her deceased husband, WILLIAM NELSON.

34.

The Alleged Debt was not owed by WILLIAM NELSON, the Plaintiff's deceased husband, and was never owed by this WILLIAM NELSON.

35.

Plaintiff knows this because during a phone call with what Plaintiff believes to be one of Defendant's representatives she requested the last four digits of the social security number for the alleged debtor, and it did not match the last four digits of her late-husband's social security number.

36.

Debt collectors like Defendant have previously sought to collect the debts of other individuals with the name William Nelson, including an individual named William R. Nelson and an individual named William N Nelson III.

37.

However, each of these other debt collectors used the full name of the debtor, distinguishing it from Plaintiff's late husband, and ceased communications once notified of the improper address and contact information.

38.

Defendant, however, continued to attempt to collect a debt from the wrong William Nelson who was deceased by continuing to mail collection letters to Plaintiff's address, even after being notified by Plaintiff that (1) Defendant had the wrong individual, (2) Defendant had the wrong address,

and (3) Plaintiff viewed the continued communications as abusive and harassing.

*Defendant's 2014 Collection Letter*

39.

Defendant sent a letter dated October 14, 2014, and addressed to a WILLIAM NELSON to Plaintiff's address (the "2014 Portfolio Letter"). **Exhibit A**, Redacted 2014 Portfolio Letter.

40.

The 2014 Portfolio Letter referenced an account number C0013T101200.

41.

The 2014 Portfolio Letter claimed an alleged debt of $2,074.36 (the "Alleged Debt") was owed to Defendant on an account with an original creditor of AARON RENTS INC.

42.

Sometime after receiving the 2014 Portfolio Letter, upon information and belief, Plaintiff called the contact phone number provided in a debt collection attempt to speak with a representative of Defendant about the Alleged Debt.

43.

Plaintiff notified Defendant's representative that the WILLIAM NELSON at the address in question was deceased.

44.

Plaintiff sought to confirm whether the Alleged Debt was associated with her late husband by asking for the last four of the social security for the alleged debtor.

45.

Defendant's representative provided the last four digits of the alleged debtor's social security number to Plaintiff.

46.

The last four digits of the alleged debtor's social security number were different than the last four digits of Plaintiff's late husband's social security number.

47.

Plaintiff informed Defendant's representative at this time that they had the wrong person as the social security numbers did not match.

48.

Plaintiff informed Defendant's representative at this time that they had the wrong address, as well, as the WILLIAM NELSON who lived at the address they sent the letter to was deceased.

49.

Plaintiff requested that Defendant stop sending communications to her address and addressed to her late husband.

*Defendant's 2015 Collection Letter*

50.

Defendant sent a letter dated June 3, 2015, and addressed to a WILLIAM NELSON to Plaintiff's address (the "2015 Portfolio Letter"). **Exhibit B**, Redacted 2015 Portfolio Letter.

51.

The 2015 Portfolio Letter referenced an account number C0013T101200.

52.

The 2015 Collection Letter claimed an alleged debt owed to Defendant of $2,074.36 on a former AARON RENTS INC account.

53.

The 2015 Collection Letter included the following paragraph of information:

> **Quality Service Specialists Available Mon. — Fri. 8 AM to 5 PM (EST)**
> Not happy with the way you were treated? Our copmany strives to provide professional and courteous service to all our customers. Contact one of your staff to discuss issues related to our quality of service to you by phone (866) 925-7109 or by e-mail at qualityserviec@portfoliorecovery.com.

54.

On June 14, 2015, Plaintiff sent an email in response to the 2015 Portfolio Letter to the email address provided in that letter for quality service, qualityservice@portfoliorecovery.com (the "June 2015 Email").

55.

The June 2015 Email included in the Subject Line the Alleged Debt's "account number" C0013T101200.

56.

A redacted copy of the June 2015 Email is attached as **Exhibit C** to this Complaint.

57.

The June 2015 Email notifies Defendant once again that Plaintiff requests that they cease sending collection letters to the address, that the William Nelson at the address to which the letters and phone calls have been sent is not the one who owed the Alleged Debt, and that their continued communications are harassing

*Defendant's 2017 Collection Letter*

58.

Defendant PORTFOLIO sent a letter to Plaintiff's residence addressed to WILLIAM NELSON dated February 28, 2017 (the "2017 Portfolio Letter") stating that PORTFOLIO was "contacting you to collect the balance owed on your account." **Exhibit D**, Redacted 2017 Portfolio Letter.

*The False, Deceptive, and Unconscionable 2017 Portfolio Letter*

59.

Defendant's letter to Plaintiff's address claimed the alleged debt was owed to Portfolio Recover Associates LLC.

60.

The 2017 Portfolio Letter lists an account number of C0013T101200.

61.

Defendant's letter states the "Current Balance Due" on the Alleged Debt was "$2,074.36."

62.

The 2017 Portfolio Letter includes an "PAYMENT OPTIONS" section which asks the recipient to "PAY THE FULL BALANCE OR CHOOSE  A SAVINGS PLAN."

63.

The "PAYMENT OPTIONS" section of the 2017 Portfolio Letter identifies three "Savings Plans," the first payment of each "must be received no later than: 03/31/2017."

64.

The first payment option of the 2017 Portfolio Letter states as follows: "1 Payment of $622.00 and SAVE $1,452.36*."

65.

The second payment option of the 2017 Portfolio Letter states as follows:  "Pay $121.00 for 6 consecutive months and SAVE $1,348.36*."

66.

The third payment option of the 2017 Portfolio Letter states as follows:  "Pay $69.00 for 12 consecutive months and SAVE $1,246.36*."

67.

The Account Offers are followed by an asterisk, which leads to the following language below the offers: "*We are not obligated to renew this offer."

68.

Below the "Company Address", in the middle of a bank of small text in the 2017 Portfolio Letter, Defendant PORTFOLIO states "[t]he law limits how long you can be sued on a debt and how long a debt can appear on your credit report.  Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

69.

Defendant does not threaten to file a in the 2017 Portfolio Letter.

70.

Defendant does not threaten to report the debt on credit reports in the 2017 Portfolio Letter.

71.

However, it should be noted that while Defendant's letter states payment or non-payment will not be reported to a credit bureau, the 2017 Portfolio Letter also states the "account will be considered 'Settled in Full'", which would lead an unsophisticated consumer to think Defendant would

report payment to a credit bureau and that this reporting would be a benefit of paying on the time-barred claim.

72.

Defendant does not disclose in the 2017 Portfolio Letter sent to Plaintiff's address that a partial payment on the alleged debt may restart the applicable statute of limitations.

73.

In fact, two of the three payment options in the 2017 Portfolio Letter require multiple payments, which would likely restart the statute of limitations on the alleged debt and subsequently allow Defendants to sue over the previously time-barred debt.

*Defendant's 2018 Collection Letter*

74.

Defendant PORTFOLIO sent a letter to Plaintiff's residence addressed to WILLIAM NELSON dated February 6, 2018 (the "2018 Portfolio Letter") stating that PORTFOLIO was "[w]e know life happens. Every day Portfolio Recovery Associates LLC works with people to create flexible payment arrangements to resolve their debt." **Exhibit E**, Redacted 2018 Portfolio Letter.

*The False, Deceptive, and Unconscionable 2018 Collection Letter*

75.

Defendant's letter to Plaintiff's address claimed the alleged debt was owed to Portfolio Recover Associates LLC.

76.

The 2018 Portfolio Letter lists an account number of C0013T101200.

77.

Defendant's letter states the "Current Balance Due" on the Alleged Debt was "$2,074.36."

78.

The 2018 Portfolio Letter includes an "Account Offers" section.

79.

The "Account Offers" section of the 2018 Portfolio Letter identifies three "Savings Plans," the first payment of each "must be received by: 03/23/2018."

80.

The first payment option of the 2018 Portfolio Letter is a "1 Month* Savings Plan" that asks for one payment of $726.03.

81.

The second payment option of the 2018 Portfolio Letter is a "3 Month* Savings Plan" that asks for three monthly payments of $244.43.

82.

The third payment option of the 2018 Portfolio Letter is a "6 Month* Savings Plan" that asks for six monthly payments of $123.13.

83.

The Account Offers are followed by an asterisk, which leads to the following language below the offers: "*We are not obligated to renew this offer."

84.

Below the "Account Offers" box of the 2018 Portfolio Letter, Defendant PORTFOLIO states "[t]he law limits how long you can be sued on a debt and how long a debt can appear on your credit report.  Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

85.

Defendant does not threaten to file a lawsuit in the 2018 Portfolio Letter.

86.

Defendant does not threaten to report the debt to credit reports in the 2018 Portfolio Letter.

87.

However, it should be noted that while Defendant's letter states payment or non-payment will not be reported to a credit bureau, the 2018 Portfolio Letter also states the "account will be considered 'Settled in Full'", which would lead an unsophisticated consumer to think Defendant would report payment to a credit bureau and that this reporting would be a benefit of paying on the time-barred claim.

88.

Defendant does not disclose in the 2018 Portfolio Letter sent to Plaintiff's address that a partial payment on the alleged debt may restart the applicable statute of limitations.

89.

In fact, two of the three payment options in the 2018 Portfolio Letter require multiple payments, which would likely restart the statute of limitations on the alleged debt and subsequently allow Defendants to sue over the previously time-barred debt.

*Plaintiff's Damages Suffered As A Result Of Defendant's Actions In*

*Violation Of The FDCPA*

90.

Defendant's actions caused Plaintiff to suffer damages in the form of stress, anxiety, and emotional distress relating to Defendant's actions in violation of the FDCPA.

91.

Plaintiff's late husband died unexpectedly and suddenly in 2010.

92.

Since that time, Plaintiff has endured emotional distress related to the sudden loss of her husband, including fear, anxiety, and stress associated in dealing with issues and matters relating to her late husband.

93.

Each letter sent by Defendant resulted in a renewed bout of anxiety, stress, and significant emotional distress, dredging up the memories of Plaintiff's sudden and unexpected loss of her husband and the circumstances surrounding it.

94.

Plaintiff sought to end Defendant's abusive, oppressive, unfair, and unconscionable communications with her multiple times prior to the filing of this lawsuit.

95.

Plaintiff's efforts including both phone calls and an email detailing the issues with the communications from Defendant, both in how they had the wrong individual and how their continued communications were abusive, harassing, and oppressive to Plaintiff in particular.

96.

Defendant had actual knowledge of the harm they were causing to Plaintiff.

97.

Despite Defendant's actual knowledge of the harm they were causing to Plaintiff, Defendant continued to send communications to Plaintiff's address that contained false and misleading information, that sought collection from Plaintiff's deceased husband, and sought collection on an account that Plaintiff's deceased husband never owed.

98.

Defendant's actions caused Plaintiff to suffer actual damages in the form of emotional distress.

*Defendant's Intentional Actions In Attempting To Collect An Alleged Debt*

99.

Defendant is a sophisticated debt collection business that has years of experience collecting millions of dollars of debt or alleged debt from consumers and other individuals or persons.

100.

Defendant knows that it is easier to continue to send collection letters like those sent to Plaintiff's address than to cease sending those letters, as it may cause individuals not liable for the alleged debt to either (1) pay the alleged debt or a portion thereof to ensure communications cease, or (2) perform Defendant's location and skip tracing services for it by, out of frustration, finding the actual alleged debtor in order to cease communications.

101.

Upon information and belief, Defendant intentionally, knowingly, and with a reckless disregard for the consequences, continued to send communications to Plaintiff's address despite being told that (1) Defendant

had the wrong individual, (2) the individual at Plaintiff's address with the name of the debtor was deceased, and (3) that he communications were harmful, abusive, harassing, and oppressive.

## FIRST CAUSE OF ACTION
### (Violations of the FDCPA by Defendant)

102.

Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103.

Based on information and belief, Defendant PORTFOLIO has violated the Fair Debt Collection Practices Act ("FDCPA").

## _COUNT 1_
_Defendant's FDCPA Violations By Engaging In Harassing, Oppressive, or Abusive Conduct In Connection With The Collection of the Alleged Debt_

104.

The FDCPA protects "any person" from conduct in connection with the collection of a debt where the natural consequence is harassment, oppression, or abuse.  15 U.S.C. § 1692d.

105.

The FDCPA states that "any debt collector who fails to comply with any provision of [the Act] with respect to <u>any person</u> is liable to such person" for actual and statutory damages.  15 U.S.C. § 1692k(a)(*emphasis added*).

## 106.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that its conduct was viewed by her as harassment, oppression, and abuse.

## 107.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that the individual the letters were addressed to was deceased.

## 108.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that the individual who allegedly owed the debt was not the one who had the same name and who lived at her address prior to his death.

## 109.

The FDCPA, 15 U.S.C. § 1692d(5), specifically prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation

repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

110.

While Defendant did not cause Plaintiff's phone number to continuously ring, Defendant engaged in behavior similar to that specifically prohibited by 15 U.S.C. § 1692d(5) by causing collection letters to be continuously mailed to Plaintiff's address despite being notified that (1) the individual with the name was deceased, (2) they had the wrong individual to begin with, and (3) Plaintiff was being harmed by the letters and viewed them as harassment and abuse.

111.

The FDCPA's protection against harassment and abuse, 15 U.S.C. § 1692d, is not limited solely to harassment and abuse directed at "consumers" as defined under the Act, but rather protects "any person" from the prohibited conduct.

112.

The FDCPA's protection against harassment and abuse, 15 U.S.C. § 1692d, is not limited to the specifically enumerated examples, 15 U.S.C. § 1692d(1)-(6), as those specifically enumerated examples are made in the Act

"[w]ithout limiting the general application" of the Act's section prohibiting harassment or abuse by debt collectors.

113.

Defendant's actions in continuing to send collection letters to Plaintiff's address despite knowing they had the wrong person, at the wrong address, and that their actions were harming Plaintiff, is conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with Defendant's collection of the Alleged Debt.

114.

Defendant's actions are in violation of the FDCPA's prohibition against harassment or abuse in connection with the collection of a debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1962d.

115.

Defendant's actions have caused Plaintiff anxiety, stress, and emotional distress, having resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

116.

Defendant is liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with

more particularity at a later date, plus reasonable court costs and attorneys'
fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).


## *COUNT 2*
*Defendant's FDCPA Violations By Using Unfair or Unconscionable Means*
*To Attempt To Collect A Debt*

### 117.

The FDCPA prohibits debt collectors from using unfair or
unconscionable means to collect or attempt to collect any debt.  15 U.S.C. §
1692f.

### 118.

The FDCPA states that "any debt collector who fails to comply with
any provision of [the Act] with respect to <u>any person</u> is liable to such
person" for actual and statutory damages.  15 U.S.C. § 1692k(a)(*emphasis
added*).

### 119.

Defendant continued to send collection letters to Plaintiff's address
after being notified by Plaintiff that its conduct was viewed by her as
harassment, oppression, and abuse.

120.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that the individual the letters were addressed to was deceased.

121.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that the individual who allegedly owed the debt was not the one who had the same name and who lived at her address prior to his death.

122.

The FDCPA's protection against unfair practices, 15 U.S.C. § 1692f, is not limited solely to unfair or unconscionable means to collect or attempt to collect a debt which impact only "consumers" as defined under the Act, but rather protects "any person" from the prohibited conduct so long as that "person" is harmed by the prohibited conduct. *See* 15 U.S.C. § 1692k(a).

123.

Defendant's actions in continuing to send debt collection letters to Plaintiff's address were intentional, knowing, and designed to attempt to collect the alleged debt from Plaintiff through her ultimate frustration in the continued communication, or by having Plaintiff perform pro bono location

or skip tracing services for Defendant out of a desire to cease receiving communications.

124.

Defendant's actions in continuing to send collection letters to Plaintiff's address despite knowing they had the wrong person, at the wrong address, and that their actions were harming Plaintiff, are unfair and unconscionable means of attempting to collect the Alleged Debt.

125.

Defendant's actions are in violation of the FDCPA's prohibition against the use of unfair and unconscionable means of attempting to collect any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1962f.

126.

Defendant's actions have caused Plaintiff anxiety, stress, and emotional distress, having resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

127.

Defendant is liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with more particularity at a later date, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

<u>*COUNT 3*</u>
*Defendant's FDCPA Violations In Sending A False, Misleading, And Deceptive Collection Letter to Plaintiff*

128.

The FDCPA prohibits debt collectors from using false, deceptive, or misleading representation or means in connection with the collection of any debt.  15 U.S.C. § 1692e.

129.

The FDCPA states that "any debt collector who fails to comply with any provision of [the Act] with respect to <u>any person</u> is liable to such person" for actual and statutory damages.  15 U.S.C. § 1692k(a)(*emphasis added*).

130.

Defendant, who is a sophisticated party that is active in the debt collection industry, aimed a carefully crafted message designed to be deceptive and misleading to the least sophisticated consumer.

131.

Defendant's 2017 Portfolio Letter and 2018 Portfolio Letter specifically provided two repayment options that, under the laws of the State of Georgia, would likely result in restarting the applicable statute of

limitations on a time-barred debt if a consumer were to choose one, or if the any other person possibly made a payment on the Alleged Debt.

132.

Defendant's Portfolio Letter does not state that there is a risk of the statute of limitations being restarted on the alleged debt, and instead remains conspicuously, and sophisticatedly, silent on the risk of a consumer choosing any of the three repayment options and causing the statute of limitations on the Alleged Debt to restart.

133.

Defendant's actions are in violation of the FDCPA's prohibition against using false, deceptive, or misleading representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1692e.

134.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that its conduct was viewed by her as harassment, oppression, and abuse.

135.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that the individual the letters were addressed to was deceased.

136.

Defendant continued to send collection letters to Plaintiff's address after being notified by Plaintiff that the individual who allegedly owed the debt was not the one who had the same name and who lived at her address prior to his death.

137.

Defendant's collection letters contained materially false, deceptive, or misleading information as it implied Plaintiff's late husband owed the Alleged Debt, when Plaintiff's late husband did not and never did owe the Alleged Debt.

138.

Defendant's collection letters would lead the least sophisticated consumer to believe that an outstanding debt obligation was owed by their late spouse, and that it might be the surviving spouse's obligation to resolve the alleged debt obligation.

139.

In fact, when Plaintiff initially received collection letters from Defendant, she was confused as to what her responsibility or the responsibility of her late husband might be for the alleged debt, and sought legal advice on how to proceed regarding the Alleged Debt and Defendant's collection letters.

140.

Defendant's actions are in violation of the FDCPA's prohibition against using false, misleading, and deceptive representations or means in connection with the collection of any debt.  Fair Debt Collection Practices Act, 15 U.S.C. § 1962e.

141.

Defendant's actions have caused Plaintiff anxiety, stress, and emotional distress, and have resulted in actual and direct harm to Plaintiff in an amount to be shown with more particularity at a later date.

142.

Defendant is liable to Plaintiff for statutory damages of up to the maximum of $1,000, plus actual damages in an amount to be shown with more particularity at a later date, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

## SECOND CAUSE OF ACTION
## (Violations of Georgia's Fair Business Practices Act by Defendant)

*COUNT 4*
*Violations of Georgia's FBPA – Legal Remedy and Damages*

143.

Based on the foregoing, Defendant PORTFOLIO RECOVERY
ASSOCIATES LLC has violated Georgia's Fair Business Practices Act
("FBPA"), O.C.G.A. § 10-1-390 *et seq.*

144.

Defendant PORTFOLIO RECOVERY ASSOCIATES LLC's actions
in continuing to mail false and misleading collection letters to Plaintiff's
address in an abusive and harassing manner that also constitutes unfair and
unconscionable means of attempting to collect a debt constitutes unfair or
deceptive acts or practices in the conduct of consumer transactions in trade
or commerce and therefore violates Georgia's Fair Business Practices Act
("FBPA"), O.C.G.A. § 10-1-390 *et seq.*

145.

Defendant, through its agents, repeatedly sent communications to
Plaintiff's address the natural consequence was to harass, oppress, or abuse
Plaintiff in Defendant's attempt to collect a debt using communications that
contained false and misleading information, therefore using unfair and

unconscionable means of attempting to collect an alleged debt, all of which violates the FDCPA.

146.

Courts have recognized that violations of the Fair Debt Collection Practices Act ("FDCPA") are also violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq. *See 1ST Nationwide Collection Agency v. Werner*, 288 Ga. App. 457, 458-60, 654 S.E.2d 428, 430-31 (2007).

147.

Defendant PORTFOLIO RECOVERY ASSOCIATES LLC's actions in violation of the FDCPA, and therefore in violation of Georgia's FBPA, were intentional in nature and part of a business model designed to collect debts based on false, misleading, deceptive, unfair, unconscionable, abusive, harassing, and oppressive collection practices.

148.

Defendant PORTFOLIO RECOVERY ASSOCIATES LLC does not maintain a place of business and does not keep assets within the State of Georgia, and therefore the requirements of O.C.G.A. § 10-1-399(b) do not apply to Plaintiff's claims against Defendant in this lawsuit.

149.

Plaintiff seeks actual damages from Defendant for the mental and emotional distress caused by Defendant's actions in violation of the FDCPA and Georgia's FBPA, as well as other actual damages which may be shown with more particularity at a later date. O.C.G.A. § 10-1-399(a).

150.

Plaintiff seeks exemplary damages, in the form of three times actual damages, against for its intentional and purposeful actions in attempting to collect the Alleged Debt in violation of Georgia's Fair Business Practices Act.  O.C.G.A. § 10-1-399(c)

151.

Plaintiff further seeks full recovery of reasonable attorney's fees and costs for this action in accordance with O.C.G.A. § 10-1-399(d).

### COUNT 5
*Violations of Georgia's FBPA – Equitable Remedy and Injunction*

152.

Pursuant to O.C.G.A. § 10-1-399(a), Plaintiff further seeks a permanent injunction against Defendant prohibiting Defendant from continuing to send collection letters for the Alleged Debt address to Plaintiff's late husband, or to any individual with a name similar to

Defendant's late husband, from the point of an award of said injunction into perpetuity.

### 153.

Plaintiff further seeks full recovery of reasonable attorney's fees and costs for this action in accordance with O.C.G.A. § 10-1-399(d).

**THIRD CAUSE OF ACTION**
**(Violations of Georgia's Unfair and Deceptive Practices Towards the Elderly Act by Defendant)**

*COUNT 6*
*Violations of Georgia's UDPTEA*

### 154.

Plaintiff meets the definition of Elder Person under Georgia's Unfair or Deceptive Practices Towards the Elderly Act ("UDPTEA"), O.C.G.A. § 10-1-850(2) because she is over 60 years of age.

### 155.

Defendant has engaged in unfair or deceptive acts or practices in the conduct of a consumer transaction, which is in violation of O.C.G.A. § 10-1-393(a).

### 156.

Violations of O.C.G.A. § 10-1-393(a) subject a violator to a civil penalty under Georgia's UDPTEA, O.C.G.A. § 10-1-851, in an amount not to exceed $10,000.00 for each violation.

157.

Defendant has committed multiple violations of O.C.G.A. § 10-1-393(a) and is therefore subject to a civil penalty of up to $10,000.00 for each violation under O.C.G.A. § 10-1-851.

158.

Plaintiff has suffered actual damages as a result of Defendant's unfair and deceptive practices towards Elder Persons under O.C.G.A. § 10-1-853, and Plaintiff is seeking damages in an amount to be determined with more particularity at a later date.

159.

Plaintiff is seeking punitive damages, if this Court or a jury determines those damages to be appropriate, as well as reasonable attorneys' fees pursuant to O.C.G.A. § 10-1-853.

160.

Plaintiff is seeking a civil penalty against Defendants for their violations of Georgia's UDPTEA for the full maximum amount of $10,000.00 for each violation pursuant to O.C.G.A. § 10-1-851.

## FOURTH CAUSE OF ACTION
### (Punitive Damages)

161.

Upon information and belief, Plaintiff alleges that Defendant and its agents acted willfully and with malice, wantonness, oppression, or with that entire want of care which would raise the presumption of conscious indifference to the consequences of its actions, entitling Plaintiffs to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

### *COUNT 7*
*Punitive Damages Under Georgia's FBPA*

162.

Plaintiff has a statutorily created right to "exemplary damages," sometimes also called punitive damages, pursuant to O.C.G.A. § 10-1-399(c) for intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq.

163.

Plaintiff alleges that Defendant's continued actions are intentional in nature and requests that this Court award Plaintiff exemplary damages in the amount of three times any actual damages awarded to Plaintiff pursuant to O.C.G.A. § 10-1-399(c).

*COUNT 8*
*Punitive Damages Under Georgia's UDPTEA*

164.

Plaintiff has a statutorily created right to recover punitive damages from Defendant, if appropriate, for Defendant's violations of Georgia's Unfair and Deceptive Practices Towards the Elderly Act as found in O.C.G.A. § 10-1-853.

165.

Plaintiff alleges that Defendant and its agents acted willfully and with malice, wantonness, oppression, or with that entire want of care which would raise the presumption of conscious indifference to the consequences of its actions, entitling Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury pursuant to O.C.G.A. § 10-1-853.

**JURY DEMAND**

166.

Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff prays that this Court:

(1)     Award an injunction against Defendant barring Defendant from continuing to send collection letters for the Alleged Debt to

Plaintiff's address pursuant to O.C.G.A. § 10-1-399(a);

(2)     Find Defendants liable for violations of the Fair Debt Collection Practices Act for the creation, execution, filing, and use of a false and misleading affidavit during the attempt to collect an alleged consumer debt;

(3)     Award Plaintiff the full $1,000 statutory damages for Defendants' FDCPA violations;

(4)     Award Plaintiff actual damages in an amount to be shown with more particularity at a later date;

(5)     Find Defendant liable for actual damages in an amount to be shown with more particularity at a later date for its violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*;

(6)     Find Defendant liable for exemplary damages in the amount of three times actual damages for its violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(c);

(7)     Find Defendant liable for actual damages in an amount to be shown with more particularity at a later date for its violations of Georgia's Unfair and Deceptive Practices Towards the Elderly Act, O.C.G.A. § 10-1-853;

(8)     Find Defendant liable for punitive damages in the amount in an amount to be determined by the enlightened conscious of a jury for Defendant's violations of Georgia's Unfair and Deceptive Practices Towards the Elderly Act, O.C.G.A. § 10-1-853;

(9)     Issue a civil penalty against Defendant in the amount of $10,000.00 pursuant to O.C.G.A. § 10-1-851 for each violation of Georgia's Unfair and Deceptive Practices Towards the Elderly Act, O.C.G.A. § 10-1-850 *et seq.*;

(10)    Award Plaintiff the entire civil penalty assessed against Defendant pursuant to O.C.G.A. § 10-1-851;

(11)   Award Plaintiff reasonable attorney's fees and costs in accordance with the FDCPA 15 U.S.C. § 1692k(a)(2)-(3);

(12)   Award Plaintiff reasonable attorney's fees and costs in accordance with the Georgia's FBPA, O.C.G.A. § 10-1-399(d), for Defendant's violations of Georgia's Fair Business Practices Act;

(13)   Award Plaintiff reasonable attorney's fees and costs in accordance with the Georgia's FBPA, O.C.G.A. § 10-1-853, for Defendant's violations of Georgia's Unfair and Deceptive Practices Towards the Elderly Act

(14)   Award Plaintiff the reasonable costs of this action;

(15)   Award Plaintiff other expenses of litigation;

(16)   Grant Plaintiff such other and additional relief as the Court deems just and equitable.

Respectfully submitted this <u>20 February 2018</u>.

<u>/s/ John William Nelson</u>
John William Nelson
State Bar No. 920108

*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.     404.348.4462
Fax.   404.549.6765

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B).  The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14-point font.

**DATED:**    20 February 2018

/s/ John William Nelson
John William Nelson
State Bar No. 920108

*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765